UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACY HEDMAN, MALINDA MCMAHON, and JAMES MONTOYA individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FAT DOUGH INC., and any related entities,<br><br>Defendant. | Docket No.:  5:24-cv-612 (DNH/MJK)<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE AND CLASS ACTION |

Named Plaintiffs TRACY HEDMAN, MALINDA MCMAHON, and JAMES MONTOYA (the "Named Plaintiffs"), by their attorneys Gattuso & Ciotoli, PLLC, allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1.      Defendant Fat Dough, Inc. ("Defendant") operates numerous Domino's Pizza franchise stores throughout New York State.

2.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, 207 and 216(b); New York Labor Law ("NYLL") § 190 *et seq.*, §§ 650 *et seq.*, 663 and 195(3); and 12 New York Codes, Rules and Regulations ("NYCRR") §142-2.2, to recover unpaid straight time wage and overtime wages owed to the Named Plaintiffs and all similarly situated persons (collectively "Plaintiffs") who are presently or were formerly employed by Defendant as hourly employees its Dominoe's pizza shop locations throughout New York State, in trades and occupations entitled to receive overtime compensation.

3.     Beginning in May 2018, and continuing through the present, Defendant has had and continues to have a policy and practice of requiring its hourly employees to work while not clocked in, resulting in off-the-clock work for which they were not compensated.

4.     As a result of Defendant's policies and practices, Defendant deprived its hourly employees of straight time wage and overtime wages for work they performed as mandated by federal and state law.

5.     Upon information and belief, Defendant also failed to provide appropriate wage notices and proper pay statements to Named Plaintiffs and those similarly situated as required under NYLL.

6.     Named Plaintiffs have initiated this action seeking for themselves, and on behalf of all similarly situated employees, all compensation, including straight time wages and overtime compensation of which they were deprived, plus interest, damages, and attorneys' fees and costs, as well damages for failure to provide wage notices and accurate pay statements.

## JURISDICTION

7.     Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under New York Labor Law.

8.     The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations is three (3) years.

9.     The statute of limitations under New York Labor Law § 198(3) is six (6) years.

## VENUE

10.     Venue for this action in the Northern District of New York under 28 U.S.C. §

1391 is appropriate because Plaintiffs reside in this District, Defendant employed Plaintiffs in this District, Defendant operates Domino's franchise stores in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## THE PARTIES

11.    Named Plaintiff Tracey Hedman is an individual residing in Oswego County, New York, who was employed by Defendant Fat Dough, Inc. as an Assistant Manager at its pizza shop facility located at 60 W 9th St, Oswego, NY 13126, in Oswego County. Plaintiff Hedman worked for Defendant from approximately April 2022 through May 2023.

12.    Named Plaintiff Malinda McMahon is an individual residing in Oswego County, New York, who was employed by Defendant Fat Dough, Inc. from 2011 through 2019, and then again from April 2021 to January 13, 2024, originally as a Driver and then as a Manager beginning in 2013. Named Plaintiff McMahon worked at Defendant's pizza shop facilities located at 60 W 9th St, Oswego, NY 13126, in Oswego County, and at 516 S 2nd St, Fulton, NY 13069 in Oswego County.

13.    Named Plaintiff James Montoya is an individual residing in Oswego County, New York, who was employed by Defendant Fat Dough, Inc. from August 2020 to January 2023, originally as a Driver and then as an Assistant Manager, at its pizza shop facility located at 60 W 9th St, Oswego, NY 13126, in Oswego County.

14.    Upon information and belief, Defendant Fat Dough, Inc. is a Foreign Business Corporation licensed to do business in New York, with its principal executive office located at 1542 N Main St., Sheridan, WY 82801.

15.    Defendant owns and operates numerous Domino's stores located throughout New York State, including those) located at 60 W 9th St, Oswego, NY 13126 and 516 S 2nd St,

Fulton, NY 13069, both within this District.

16.     Upon information and belief, Defendant owns and operates at least 30 Domino's stores in New York State, and possibly in excess of 80 locations in New York State.

17.     Upon information and belief, Defendant Fat Dough Inc.'s gross yearly revenue is in excess of $500,000.00.

18.     At all times relevant to this action, Defendant was the Plaintiffs' employer as defined by NYLL §§ 2(6), 190(3), and 651(6), along with 29 U.S.C. § 203, *et seq.*

19.     Upon information and belief, Defendant exercises extensive or exclusive control over the means by which its employees perform their job.

20.     Upon information and belief, under 29 U.S.C. 201, *et seq.* and the cases interpreting the same, the Defendant constitutes an "enterprise engaged in commerce."

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff's repeats and re-alleges the foregoing allegations hereof.

22.     This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

23.     This action is brought on behalf of Named Plaintiffs and a putative collective consisting of similarly situated employees who worked for Defendant as hourly employees at its Domino's locations in New York State.

24.     Named Plaintiffs bring this suit on behalf of themselves and the following similarly situated persons: All current and former hourly employees who have worked for Defendant at its Domino's locations in New York State from three years prior to the date this Complaint is filed through the date of trial who were required to work off the clock and as a result were not compensated for all hours worked.

25.    The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

26.    Beginning in May 2018, and continuing through the present, Named Plaintiffs and the other members of the putative collective are and have been similarly situated, were paid the same way, and are and have been subjected to Defendant's common policy and practice of depriving its hourly employees of straight time and overtime wages for weeks in which they worked over 40 hours.

27.    These similarly situated current and former employees would benefit greatly from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the lawsuit. These similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

**NEW YORK CLASS ACTION ALLEGATIONS**

28.    Plaintiff repeats and re-alleges the foregoing allegations hereof.

29.    This action is properly maintainable as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

30.    This action is brought on behalf of Named Plaintiffs and a putative class consisting of similarly situated employees who worked for Defendant as hourly employees at its Domino's store locations throughout New York State.

31.    Named Plaintiffs bring this suit on behalf of themselves and the following similarly situated persons: All current and former hourly employees who have worked for Defendant at its Domino's locations in New York State from six years prior to the date this Complaint is filed through the date of trial who were required to work off the clock and as a result were not compensated for all hours worked.

32.    Beginning in May 2018, and continuing through the present, Plaintiffs have all been victims of Defendant's common policies and practices of depriving its hourly employees of straight time wage and overtime wages, and thus failing to pay them for all regular and overtime hours worked.

33.    The putative class is so numerous that joinder of all members is impracticable. The size of the putative class and collective are conservatively believed to be in excess of 200 employees, with the belief that the actual number is far greater based on a standard turnover rate of 25% and the number of likely positions filled at each known and unknown location. In addition, the names of all potential members of the putative class are not known.

34.    The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include but are not limited to: (1) whether Defendant paid Named Plaintiffs and members of the putative class for all hours worked, including regular and overtime hours, (2) whether Defendant provided  Named Plaintiffs and members of the putative class with proper and accurate wage notices every time they were either hired or received a change in their respective hourly wage rate; and (3) whether Defendant provided Named Plaintiffs and members of the putative class with accurate pay statements.

35.    The claims of the Named Plaintiffs are typical of the claims of the putative class members. Named Plaintiffs and putative class members were all subject to Defendant's policies and willful practice of depriving its employees of straight time wage and overtime wages a n d  failing to provide accurate wage notices and pay statements.

36.    Named Plaintiffs and counsel will fairly and adequately protect the interests of the putative class. Named Plaintiffs have retained counsel experienced in complex wage and

hour collective and class- action litigation.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The individual Named Plaintiffs and putative class members lack the financial resources to adequately prosecute separate lawsuits against Defendant. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendant's policies.

## FACTS

38.     Named Plaintiffs repeat and re-allege the foregoing allegations hereof.

39.     Named Plaintiff Tracey Hedman worked for Defendant from approximately April 2022 through May 2023 as an Assistant Manager for Defendant's Domino's location at 60 W 9th St, Oswego, NY 13126.

40.     Named Plaintiff Tracey Hedman typically worked 40 or more hours per week.

41.     Named Plaintiff Tracey Hedman's last rate of pay was $17.00 per regular hour and $25.50 per overtime hour.

42.     Named Plaintiff Malinda McMahon worked for Defendant from 2011 through 2019, and then again from 2022 to January 13, 2024, originally as a Driver and then as a Manager beginning in 2013. Named Plaintiff McMahon worked at Defendant's pizza shop facilities located at 60 W 9th St, Oswego, NY 13126, in Oswego County, and at 516 S 2nd St, Fulton, NY 13069 in Fulton County.

43.     Named Plaintiffs Malinda McMahon typically worked 35-40 or more hours per week.

44.     Named Plaintiff Malinda McMahon's last rate of pay was $18.00 per regular hour and $27.00 per overtime hour.

45.    Named Plaintiff James Montoya worked for Defendant from August 2020 to January 2023, originally as a Driver and then as an Assistant Manager, at its pizza shop facility located at 60 W 9th St, Oswego, NY 13126, in Oswego County.

46.    Named Plaintiff James Montoya typically worked 40 or more hours per week.

47.    Named Plaintiff James Montoya's last rate of pay was approximately $18.00 per regular hour and $27.00 per overtime hour.

**A.  Hourly Employees Worked Past Mandatory Clock-Out Time Set by Defendant**

48.    Upon information and belief, Beginning in May 2018, and continuing through the present, all of Defendant's Domino's locations in New York State had a night shift manager and at least one to three other hourly employees (ex: Delivery Driver, Pizza Maker, etc.). scheduled to handle closing duties at the end of the day. The specific manager and other employees who worked the closing shift at each location varied each night.

49.    After the end of business hours, the night manager and present employees were required to perform various maintenance-related tasks as part of the closing process. These tasks primarily consisted of cleaning around the store, the night manager performing any necessary administrative record-keeping (ex: employee time and pay), and anything else that needed to be done in preparation for the next business day.

50.    Defendant, via the respective General/District Managers, instructed store managers to make sure that all night shift employees were officially clocked out by 45 minutes past the end of business hours that day at the latest, regardless of whether there was still additional work that needed to be done for closing. If ever Defendant saw that employees had clocked out past their set deadline, it was messaged to the manager in charge of the location where it occurred, and they were pressured to follow the clock-out deadline policy.

51.     Because of the amount of work that usually needed to be completed after the close of business hours, it was common for employees, both the night managers and night shift workers, to work beyond Defendant's mandatory clock-out deadline.

52.     According to managers, employees could work up to over an hour past Defendant's mandatory clock-out time in order to complete the closing process.

53.     Employees would not receive any compensation for work performed after clocking out.

**B.  Employees Performed Nightly Off-the-Clock Bank Runs for Defendant**

54.     Beginning in May 2018, and continuing through the present, at all of Defendant's Domino's locations in New York State, each and every night after closing, the night manager and a delivery driver were required to travel together from their Domino's location to a designated local bank to deposit cash for Defendant.

55.     Upon information and belief, the night manager and driver who performed this nightly bank run at each Domino's location varied each night.

56.     Upon information and belief, this bank run practice regularly occurred throughout the entire relevant period of time.

57.     This nightly bank run was to be performed after all the employees had clocked out from the night shift, the location's timekeeping and computer system had been shut down, and the store was completely closed up, meaning that this work demanded by Defendant was always performed off the clock.

58.     Upon information and belief, the average total time it took for the manager and driver to leave the store after closing up, drive to the bank, conduct the deposit, and then drive back to the Domino's location for the night manager to be dropped off, was approximately 10-

20 minutes depending on the respective locations of the Domino's and the designated bank.

59.     Night managers were instructed by Defendant to add approximately 5 additional minutes of time to the recorded work hours from that day for themselves and the driver employee accompanying them on the bank run in order to compensate both of them for the time spent performing the bank run. This time was added prior to shutting down the store's time-keeping and computer system, and therefore prior to the bank runs actually taking place. This practice constitutes an acknowledgement by Defendant of the off the clock work policy. However, it failed to fully compensate named Plaintiffs and members of the putative class for all time worked off the clock.

60.     Upon information and belief, not every night shift manager added additional time to the recorded work hours for employees who performed one or more night bank runs for Defendant in a given week.

61.     Upon information and belief, the amount of time Defendant instructed night managers to compensate employees for the night bank runs was an arbitrary number that did not accurately compensate said employees for the full amount of time spent performing this off-the-clock assignment.

62.     In certain weeks, Defendant's practices of requiring hourly employees to perform work off the clock and not properly compensating them for such time caused the Named Plaintiffs, and those similarly situated, to not receive proper straight time and/or overtime compensation.

63.     With respect to Named Plaintiff Hedman:

A. Upon information and belief, he was not compensated for additional earned overtime pay during pay periods where he performed work off the clock for

Defendant. Such pay periods included, but are not limited to:

1. 04/18/22 – 04/24/22
2. 04/25/22 – 05/01/22
3. 05/02/22 – 05/08/22
4. 05/16/22 – 05/22/22
5. 05/23/22 – 05/29/22
6. 05/30/22 – 06/05/22
7. 06/06/22 – 06/12/22
8. 06/13/22 – 06/19/22
9. 06/27/22 – 07/03/22
10. 07/11/22 – 07/17/22
11. 07/25/22 – 07/31/22
12. 08/15/22 – 08/21-22
13. 08/22/22 – 08/28/22
14. 08/29/22 – 09/04/22

B. Upon information and belief, he was not compensated for additional earned straight time and/or overtime pay during pay periods where he performed work off the clock for Defendant. Such pay periods included, but are not limited to:

1. 06/20/22 – 06/26/22
2. 09/05/22 – 09/11/22

64.     With respect to Named Plaintiff McMahon:

A. Upon information and belief, she was not compensated for additional earned overtime pay during pay periods where she performed work off the clock for Defendant. Such pay periods included, but are not limited to:

1. 04/26/21 – 05/02/21
2. 05/17/21 – 05/23/21
3. 06/28/21 – 07/04/21
4. 08/16/21 – 08/22/21
5. 09/31/21 – 09/19/21
6. 10/11/21 – 10/17/21
7. 01/17/22 – 01/23/22
8. 02/28/22 – 03/06/22
9. 04/04/22 – 04/10/22
10. 05/09/22 – 05/15/22
11. 08/01/22 – 08/07/22
12. 09/12/22 – 09/18/22

13. 10/03/22 – 10/09/22
14. 11/07/22 – 11/13/22
15. 12/12/22 – 12/18/22
16. 12/26/22 – 01/01/23
17. 01/30/23 – 02/05/23
18. 02/13/23 – 02/19/23
19. 02/27/23 – 03/05/23
20. 03/20/23 – 03/26/23
21. 04/10/23 – 04/16/23
22. 07/31/23 – 08/06/23
23. 09/11/23 – 09/17/23
24. 10/16/23 – 10/22/23

B. Upon information and belief, she was not compensated for additional earned straight time and/or overtime pay during pay periods where she performed work off the clock for Defendant. Such pay periods included, but are not limited to:

1.  06/21/21 – 06/27/21
2.  07/05/21 – 07/11/21
3.  10/18/21 – 10/24/21
4.  11/08/21 – 11/14/21
5.  11/29/21 – 12/05/21
6.  03/21/22 – 03/27/22
7.  04/11/22 – 04/17/22
8.  05/02/22 – 05/08/22
9.  06/27/22 – 07/03/22
10. 09/26/22 – 10/02/22
11. 11/28/22 – 12/04/22
12. 01/02/23 – 01/08/23
13. 04/24/23 – 04/30/23
14. 05/08/23 – 05/14/23
15. 07/24/23 – 07/30/23
16. 10/02/23 – 10/08/23
17. 12/11/23 – 12/17/23
18. 01/01/24 – 01/07/24
19. 01/08/24 – 01/14/24

65.     Accordingly, Named Plaintiffs received less overtime pay than what they were entitled to.

66.      Upon information and belief, Defendant applies this practice to all Named Plaintiffs and all hourly workers in New York State.

12

67.     Upon information and belief, like Named Plaintiffs, members of the putative class and collective were paid for fewer hours than they actually worked in a given week, resulting in unpaid regular and overtime hours.

### C.  <u>Wage Notice and Pay Statement Violations</u>

68.     Furthermore, upon information and belief, Defendant never provided Named Plaintiffs and those similarly situated with all required wage notices or proper and accurate pay statements during their time of employment in violation of NYLL § 195(1) and (3). As a result of Named Plaintiffs and those similarly situated not being provided with proper pay statements that accurately recorded the hours they worked in any given week they were unable to determine whether they were properly paid.

69.     Employees who were promoted to a Manager or Assistant Manager position at any store owned and operated by Defendant never received a wage notice for their increased hourly wage following their promotion.

70.     Any and all employees who ever received an increase in their hourly wage rate were only advised about their wage increase via a verbal notice by a representative of Defendant, such as the local District Manager.

71.     Named Plaintiffs have initiated this action seeking for himself, and on behalf of all similarly situated employees, all compensation, including straight time wages and overtime compensation of which they were deprived, plus interest, damages, and attorneys' fees and costs.

## FIRST CAUSE OF ACTION
## UNPAID WAGES AND OVERTIME UNDER FLSA

72.    The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

73.    The Named Plaintiffs and similarly situated hourly employees of Defendant bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

74.    Under the FLSA, Named Plaintiffs and similarly situated hourly employees are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

75.    Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and similarly situated hourly employees for all time worked, including time which would have qualified as overtime.

76.    Upon information and belief, Named Plaintiffs and those similarly situated hourly employees frequently worked more hours than what they were paid for, resulting in a paycheck for less time than what the Named Plaintiffs and those similarly situated actually worked.

77.    On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid to the Named Plaintiffs and other similarly situated employees.

78.    The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

## SECOND CAUSE OF ACTION
## NEW YORK OVERTIME WAGE COMPENSATION

79.    The Named Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

80.    Title 12 NYCRR § 142-2.2 requires that, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate for hours worked in excess of 40 hours in one workweek.

81.    New York Labor Law § 663, provides that "[i]f any employee is paid by his employer less than the wage to which he is entitled under the provisions of this article, he may recover in a civil action the amount of any such underpayments, together with costs and such reasonable attorneys' fees."

82.    Upon information and belief, Named Plaintiffs and those similarly situated regularly worked more than forty 40 hours a week while working for Defendant.

83.    Upon information and belief, Named Plaintiffs and those similarly situated worked more hours than what they were paid for, including overtime hours.

84.    Upon information and belief, Named Plaintiffs and those similarly situated did not receive overtime compensation for all hours worked in excess of 40 hours in any given week.

85.    Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and those similarly situated for all time worked, including time which would have qualified as overtime.

86.    By the foregoing reasons, Defendant is liable to Named Plaintiffs and those similarly situated in an amount to be determined at trial, plus interest, liquidated damages, attorneys' fees, and costs.

## THIRD CAUSE OF ACTION
## FAILURE TO PAY ALL WAGES UNDER NYLL

87.    The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

88.    Pursuant to Article Six of the New York Labor Law, workers, such as Named Plaintiffs and other members of the putative class action, are protected from wage underpayments and improper employment practices.

89.    Pursuant to New York Labor Law § 190, the term "employee" means "any person employed for hire by an employer in any employment."

90.    As person employed for hire by Defendant, Named Plaintiffs and other members of the putative class action are "employees," as understood in Labor Law § 190.

91.    Pursuant New York Labor Law § 190, the term "employer" includes "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

92.    As an entity that hired the Named Plaintiffs and other members of the putative class, Defendant is an "employer."

93.    The Named Plaintiffs and other members of the putative class agreed upon wage rate and/or overtime compensation rate constitutes "wages" within the meaning of New York Labor Law §§ 190, 191.

94.    Pursuant to New York Labor Law § 191 and the cases interpreting the same, workers such as Plaintiffs and other members of the putative class action are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

95.    Pursuant to New York Labor Law § 652 and the cases interpreting same, "Every employer shall pay to each of its employees for each hour worked a wage of not less than" the statutory minimum wage.

96.    In failing to pay the Named Plaintiffs and other members of the putative class proper wages for time worked in one week, Defendant violated New York Labor Law § 191, by failing to pay Plaintiffs and other members of the putative class all of their wages earned within the week such wages were due.

97.    Pursuant to New York Labor Law § 198, Named Plaintiffs and those similarly situated bring this action to recover wages to which they are entitled.

98.    Defendant failed and continues to fail to pay Named Plaintiff and those similarly situated for all hours worked at the appropriate rate of pay, including overtime rates for work in excess of 40 hours per week, as required under to NYLL §§ 190, *et. seq.*, 650, *et. seq.*, and, 19 NYCRR §§ 142, *et. seq.*

99.    On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiffs and other similarly situated employees.

100.    The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the NYLL.

## FOURTH CAUSE OF ACTION
## FAILURE TO PROVIDE ANNUAL WAGE NOTICES UNDER NYLL

101.    Named Plaintiffs re-allege and incorporate by reference all the allegations set forth above.

102.    Defendant willfully failed to supply Named Plaintiffs and those similarly situated with wage notices, as required by NYLL § 195(1), in English or in the language identified as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

103.    Named Plaintiffs and those similarly situated did not receive all required wage notices during their employment with Defendant.

104.    Through their knowing or intentional failure to provide Named Plaintiffs and those similarly situated with the wage notices required by the NYLL, Defendant has willfully violated NYLL §§ 190 et. seq., and the supporting New York State Department of Labor Regulations.

105.    According to NYLL § 198-1(b), Named Plaintiffs and those similarly situated are entitled to $50 for every day in which they did not receive a wage notice and/or statement, or a total of $5,000, together with costs and reasonable attorney's fees.

106.    By the foregoing reasons, Defendant has violated NYLL § 195(1) and are liable to the Plaintiffs under NYLL § 198-1(b) in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## FAILURE TO PROVIDE PROPER PAY STATEMENTS UNDER NYLL

107.    The Named Plaintiffs repeat and re-allege the allegations set forth above as if fully set forth herein.

108.    Defendant has willfully failed to supply Named Plaintiffs with proper and accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

109.    Recording less hours on their paystubs than Named Plaintiffs' worked each week was part of Defendant's practice to deprive Plaintiffs of their regular and/or overtime pay.

110.    By routinely providing Named Plaintiffs with inaccurate and/or misleading information, or by failing to provide information, Defendant made it more difficult for Plaintiffs to determine whether and to what extent they were underpaid each week, thus impinging on their rights and their ability to advocate for proper pay.

111.    Through their knowing or intentional failure to provide Plaintiffs with pay statements as required by the NYLL, Defendant willfully violated NYLL §§ 190 et. seq., and the supporting New York State Department of Labor Regulations.

112.    According to NYLL § 198-1(d), Plaintiffs are entitled to $250 for every day they did not receive a proper and accurate pay statement, or a total of $5,000, together with costs and reasonable attorney's fees.

113.    By the foregoing reasons, Defendant violated NYLL §§ 195(3) and is liable to Plaintiffs under NYLL 198-1(d) in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

<u>**JURY TRIAL DEMANDED**</u>

114.    Plaintiff demands that all issues of fact be decided by a jury.

**WHEREFORE**, Named Plaintiff, individually and on behalf of all other persons similarly situated who were employed by Defendant, demand judgment:

1)    On the First Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the FLSA;

2)    On the Second Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law, and

3)    On the Third Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law, an

4)    On the Fourth Cause of Action, $50 for every day in which they did not receive a wage notice and/or statement, or a total of $5,000, together with costs and reasonable attorney's fees.

5)      On the Fifth Cause of Action, $250 for every day in which they did not receive a proper pay statement, or a total of $5,000, together with costs and reasonable attorney's fees.

(4)     Such other and further relief as this Court may deem just and proper.

Dated: May 3, 2024

*/s/ Ryan G. Files*
Ryan G. Files, Esq.
Frank S. Gattuso, Esq.
GATTUSO & CIOTOLI, PLLC
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
(315) 314-8000
rfiles@gclawoffice.com
fgattuso@gclawoffice.com

*Attorneys for the Plaintiff and putative class and collective*